IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case Number:

Gold, Inc. dba Gold-Bug For Kids, Inc.,

                    Plaintiff,

v.

H.I.S. Juveniles, Inc.,

                    Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Comes now Gold, Inc. doing business as Gold-Bug For Kids, Inc. ("Gold-Bug"), the Plaintiff, by and through their counsel, R. Parker Semler and Andrew Oh-Willeke of Semler & Associates, P.C. who makes the following complaint against Defendant H.I.S. Juveniles, Inc. ("H.I.S."):

### I. OVERVIEW

1.     Gold-Bug is suing H.I.S. because H.I.S. has violated Gold-Bug's rights under the Lanham Act and because H.I.S. has taken acts which constitute unfair competition by misappropriation through its marketing and distribution of certain children's backpacks in an infringing manner.

### II.    PARTIES, JURISDICTION AND VENUE

2.     Gold-Bug is a Colorado corporation in good standing with its principal offices in Adams County, in the State of Colorado.

3.     H.I.S. is a New York corporation with its principal offices in New York State. H.I.S. is not an instrumentality or agency of the United States government, or of any U.S. state or local government, or of any foreign state.

4.     This Court has subject-matter jurisdiction over Gold-Bug's Lanham Act claims pursuant to 11 U.S.C. § 1121 (Lanham Act claims), 28 USC § 1331 (federal question), 28 USC § 1332 (Diversity of Citizenship) and 28 USC § 1367 (Supplemental Jurisdiction)

5.     A state court of general jurisdiction in Colorado would have jurisdiction over H.I.S., because it transacted business in the State of Colorado and committed tortious acts within the State of Colorado, within the meaning of Colorado Revised Statutes § 13-1-124(1)(a) and (b).

6.    The United States District Court for the District of Colorado has specific personal jurisdiction over H.I.S in this action in any case in which a state court of general jurisdiction in Colorado would have specific personal jurisdiction over H.I.S. in this action.

7.    Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1391(a) in every civil action in which it has subject-matter and personal jurisdiction over the Defendant.

### III.   GOLD-BUG HAS TRADEMARK AND TRADE DRESS RIGHTS

8.    Gold Bug is the exclusive rights holder of various United States Patent and Trademark Office principal register and supplemental register trademarks and trade dress related to the Gold Bug line of Gold Bug Fun Backpack and Gold Bug Harness Buddy® products, which are children's backpacks and children's backpacks with a harness and a tether (the "Gold-Bug Backpacks").

9.    These trademarks for the Gold-Bug Backpacks include principal register trademarks for the "2-In-1 Harness Buddy", including word marks "Harness Buddy" (registration no. 3,322,188), and "2-In-1" (registration no. 3,882,229). It has used these marks in commerce since December of 2004.

10.   Gold Bug's principal register word trademark for "Harness Buddy" is incontestable within the meaning of Lanham Act (15 U.S.C. § 1065). Gold Bug's principal register word trademark for "2-IN-1" has acquired distinctiveness under the meaning of Lanham Act (15 U.S.C. §1052(f).

11.   Gold-Bug also has supplemental register trademarks for three different animal designs in connection with these products (registration numbers 3559223, 3559226, and 3559217).

12.   These supplemental register trademarks complement Gold-Bug's trade dress rights in these goods.

13.   Gold-Bug sells Gold-Bug Backpacks using trade dress (and unregistered trademarks) in connection with the sale and marketing of the Gold-Bug Backpacks described in Paragraph 24 below.

14.   Gold-Bug's trade dress for the Gold-Bug Backpacks described above is inherently distinctive or has become distinctive through secondary meaning.

15.   Gold-Bug's trade dress for the Gold-Bug Backpacks is not functional.

16.   All conditions precedent to Gold-Bug's enforcement of the trademark, trade dress and unfair competition claims set forth in this action have been met.

### IV.   H.I.S. HAS WILFULLY VIOLATED GOLD-BUG'S LANHAM ACT RIGHTS AND HAS UNFAIRLY COMPETED WITH GOLD-BUG THROUGH MISAPPROPRIATION OF BUSINESS VALUE

17.   H.I.S. had actual and constructive notice at all times relevant to this action that Gold-Bug had

one or more registered trademarks with the Patent & Trademark Office related to the H.I.S. backpacks.

18. H.I.S. has been on notice of the existence of these marks and their infringement of them since their receipt of a letter in July 14, 2009 informing them that their products, including the "3 in 1 Backpack Harness" and "2-In-1 Safety Harness".

19. Gold-Bug asked H.I.S., in writing, by counsel, to cease and desist its distribution of the H.I.S. backpacks again on June 9, 2014.

20. H.I.S. stated in response to this request in 2014, in writing, by counsel, that H.I.S. takes the position that its distribution of the H.I.S. backpacks is not infringing.

21. H.I.S. has imported children's backpacks from China to the United States, and then has marketed and distributed them in interstate commerce to retail customers ('the H.I.S. Backpacks"). The H.I.S. Backpacks are backpacks for children in an animal character design with a harness with a tether for controlling a child's movements. The H.I.S. backpacks are sold under product names including the "2-in-1 Butterfly Backpack Harness", the "2-in-1 Caterpillar Backpack Harness", and the "2-in-1 Animal Harness Backpack."

22. H.I.S.'s marketing and distribution of the H.I.S. Backpacks in interstate commerce infringes upon Gold-Bug's trademark and trade dress rights in connection with the Gold-Bug Backpacks.

23. The packing and product names for the H.I.S. Backpacks, like "2-in-1 Harness Buddy" for which Gold-Bug has principal register trademarks, contain the words "2-in-1" and "Harness" and feature a child's backpack containing a harness in an animal character design, with a tether for controlling a child's movements.

24. The trade dress of the H.I.S. Backpacks is almost identical to Gold-Bug's trade dress and has a "substantial similarity of appearance."
- Gold-Bug's trade dress includes the phrase "2-in-1 Harness." The same phrase is found in the H.I.S. packaging
- Gold-Bug's trade dress includes the phrase: "Keep your child close and safe." The H.I.S. packaging includes the phrase: "Helps keep child safe and close." The phrases appear on the same part of the packaging in a similar font and almost identical color on the same part of the package.
- Gold-Bug's trade dress includes the phrase: "straps adjust". The H.I.S. packaging includes the phrase: "adjustable straps."
- Gold-Bug's trade dress includes the phrase: "remove tether." The word "tether" is a low frequency word to describe that part of the product that has many synonyms such as "lead", and "restraint." The H.I.S. packaging includes the phrase: "removable tether"
- Gold-Bug's trade dress includes the phrase: "perfect for . . . travel." The H.I.S. packaging includes the phrase: "perfect for . . . traveling." Words such as "trips", "adventures", or "outings" could have been used instead, but H.I.S. chose a variant of the same word for its packaging.
- Gold-Bug's trade dress includes soft, plush fabric. The H.I.S. product has an almost identical soft, plush fabric.
- The material of the tether and the hook in the tether attachment in the H.I.S. product is

- almost identical to the material in the Gold-Bug tether and tether attachment, despite many non-functional alternatives for that part's appearance.
- The H.I.S. product and packaging use an almost identical color, finish and texture palette to the Gold-Bug product and packaging.
- The H.I.S. product has almost identical dimensions to the Gold-Bug product.
- Gold-Bug's trade dress includes a novelty animal character that has at least four limbs, a head, and facial features while incorporating the tether as a tail. The H.I.S. product does the same. The choice of a novelty animal character as opposed to a novelty person character, alien, robot, fantasy creature or cartoon character is not functional.
- Gold-Bug's trade dress includes a cardboard box that is approximately twelve inches tall and five inches wide which covers only about the bottom one-third of the product at a height that does not correspond to any functional part of the product, secured with zip ties, and wrapped in plastic packaging the prevents the two-thirds open box from being functional by allowing consumers to touch the product. This is distinctive because most products for children in this age group are sold in enclosed cardboard boxes with integrated plastic windows, rather than an open box enclosed in a plastic bag which is distinctive because it is anti-functional. The integrated closed box package with a plastic window is cheaper to put together in the factory, stacks more neatly in stores than the Gold-Bug trade dress and is less prone to snags in shipping, but the Gold-Bug trade dress still doesn't allow the consumer to touch the material of the product. Yet, the H..I.S. packaging is virtually identical in dimensions, shape and materials to the Gold-Bug packaging.
- Gold-Bug's trade dress features a parent and a child using the product in a particular pose. The H.I.S. product shows a parent and a child in a very similar pose on the same part of the packaging.
- Gold-Bug's trade dress contains the phrase "converts into a fun backpack." The H.I.S. packaging contains the phrase "fully functional backpack" which is a choice of words that linguistically mimics the "fun" language of the Gold-Bug trade dress. Keep in mind that many consumers of this product are just starting to learn to sound out parts of words.
- Gold-Bug's product is marketed as an "Animal Harness Buddy". The H.I.S. product is marketed as an "Animal Backpack Harness."
- Gold-Bug's product is marketed as "Great for malls". The H.I.S. product is marketed as "Perfect for . . . shopping."

25. The packaging and product names and trade dress of the H.I.S. Backpacks are confusingly similar to the trademarks and trade dress of the Gold-Bug Backpacks and as a result are likely to confuse retail consumers seeking to purchase products of this type.

26. H.I.S.'s marketing and distribution of the H.I.S. Backpacks constitutes unfair competition by misappropriation.

V. **THIS H.I.S. CONDUCT IS COVERED BY COLORADO'S LONG ARM STATUTE**

27. H.I.S. had actual and constructive notice at all times relevant to this action that Gold-Bug was a Colorado corporation with its principal place of business in Colorado.

4

28. Wal-Mart Stores, Inc, doing business as Wal-Mart, is a Delaware corporation with its principal offices in the State of Arkansas ("Wal-Mart"). Wal-Mart is registered with the Colorado Secretary of State as a foreign corporation in good standing, authorized to do business in the State of Colorado who has designated a registered agent for service of process in Colorado and has numerous permanent retail stores, offices and warehouses in the State of Colorado. Wal-Mart is not a defendant in this action at this time.

29. Kohl's Department Stores, Inc., is a Delaware corporation with its principal offices in the State of Wisconsin (Kohl's). Kohl's is registered with the Colorado Secretary of State as a foreign corporation in good standing, authorized to do business in the State of Colorado who has designated a registered agent for service of process in Colorado and has multiple permanent retail stores and offices in the State of Colorado. Kohl's is not a defendant in this action at this time.

30. H.I.S. has marketed, sold and distributed many thousands of H.I.S. Backpacks in interstate commerce in Colorado and elsewhere during the two years prior to the filing of this action through Wal-Mart, Kohl's and others.

31. A substantial share of the H.I.S. Backpacks at issue in this action were sold and delivered by H.I.S. to Wal-Mart to a warehouse located in Colorado, from which Wal-Mart distributed a substantial share of those H.I.S. backpacks to its retail customers through Wal-Mart's stores in Colorado.

32. A substantial share of the H.I.S. Backpacks at issue in this action were sold and delivered by H.I.S. to Kohl's at a location in Colorado, from which Kohl's distributed a substantial share of those H.I.S. Backpacks to its retail customers through Kohl's stores in Colorado.

33. H.I.S. has marketed and sold H.I.S. Backpacks to wholesale and retail customers in Colorado.

34. H.I.S. knew at all times relevant to this action that Colorado was the immediate destination of the H.I.S. Backpacks sold to Wal-Mart and Kohl's under its contracts with them, and H.I.S. also knew that a substantial share of these H.I.S. backpacks would be finally distributed to retail customers in Colorado.

35. H.I.S. and Wal-Mart expressly contemplated the possibility that H.I.S. might sell H.I.S. backpacks, including H.I.S. Backpacks that were to be delivered to it in Colorado, that infringed on third-party intellectual property rights, and expressly provided for that eventuality in their contracts of sale calling for the delivery of H.I.S. Backpacks to locations including Colorado.

### VI. GOLD-BUG IS ENTITLED TO INJUNCTIVE RELIEF

36. Despite knowledge of Gold-Bug's trademark and trade dress rights, H.I.S. has willfully continued to market, sell and distribute H.I.S. Backpacks under names including the "2-in-1 Butterfly Backpack Harness", "2-in-1 Caterpillar Backpack Harness", and "2-in-1 Animal Harness Backpack."

37. H.I.S. continues to market, sell and distribute H.I.S. Backpacks. Retail sales of H.I.S. backpacks take place in Colorado and elsewhere on a daily basis through Wal-Mart, Kohl's and other retailers in markets where Gold-Bug markets, sells and distributes Gold-Bug Backpacks.

38.    These continuing infringements damage Gold- Bug and subject it to irreparable harm for which it has no other adequate remedy.

### VII.   GOLD-BUG'S DAMAGES

39.    Gold-Bug has a claim for money damages of any character and of all types which may be awarded under the Lanham Act in excess of $100,000 against H.I.S., for its marketing and distribution of the H.I.S. backpacks in interstate commerce in violation of Gold-Bug's rights under the Lanham Act and the common law, as a result of many thousands of individual infringing acts by H.I.S. of H.I.S Backpacks with retail prices in the vicinity of $10 to $20 per unit, without the time period allowed by the applicable statute of limitations.

40.    Gold-Bug recognizes that the damages from its multiple claims for relief against H.I.S. overlap in part, and asks that it be awarded a single recovery for each type of damages that H.I.S. may be obligated to pay even if Gold-Bug has multiple theories upon which it is entitled to this relief, in an amount to be proven at trial.

### VIII. GOLD-BUG'S CLAIMS FOR RELIEF AGAINST H.I.S.

#### A.    FIRST CLAIM (REGISTERED TRADEMARK INFRINGEMENT)

41.    Gold-Bug is the owner of the principal register word trademarks "Harness Buddy" (registration no. 3,322,188),. and "2-In-1" (registration no. 3,882,229) that are presumptively valid and have acquired a secondary meaning in the marketplace.  The "Harness Buddy" trademark is incontestable.

42.    H.I.S. has at all times relevant to this action had knowledge that these principal register trademarks existed and that Gold-Bug has demanded that it cease and desist from using these principal register trademarks.

43.    H.I.S. has marketed and distributed H.I.S. Backpacks in interstate commerce using these registered trademarks and colorable imitations of these registered trademarks in a manner which is likely to cause confusion, or to cause mistake, or to deceive retail customers for these products in violation of the Lanham Act giving rise to a private cause of action pursuant to 15 U.S.C. § 1114(1).

44.    It has been the intent of H.I.S. at all times pertinent to this action to confuse, cause to make mistakes, and deceive retail customers for products such as the Gold-Bug Backpacks and H.I.S. Backpacks.

45.    H.I.S. willfully continues to market and distribute H.I.S. Backpacks which infringe upon Gold-Bug's registered trademarks.

46.    Gold-Bug has suffered damages as a result of Lanham Act violations by H.I.S. entitling it to statutory and compensatory and punitive damages, its reasonable attorney's fees and costs in connection with this action, and all injunctive relief authorized under the Lanham Act.

B.     SECOND CLAIM (TRADEMARK AND TRADE DRESS INFRINGMENT)

47.    Gold-Bug is the owner of unregistered trademarks, supplemental register trademarks and trade dress which have acquired a secondary meaning in the relevant market for children's products through use in connection with the marketing and distribution of the Gold-Bug Backpacks.

48.    Gold-Bug's trade dress for the Gold-Bug Backpacks described above is inherently distinctive or has become distinctive through secondary meaning.

49.    Gold-Bug's trade dress for the Gold-Bug Backpacks is not functional.

50.    The trade dress of the H.I.S. Backpacks is almost identical to Gold-Bug's trade dress and has has a "substantial similarity of appearance."

51.    Gold-Bug was using these unregistered trademarks, supplemental register trademarks and trade dress to market and distribute the Gold-Bug Backpacks before H.I.S. began to distribute the H.I.S. Backpacks and has continued to use these unregistered trademarks, supplemental register trademarks and trade dress to market and distribute the Gold Bug Backpacks in interstate commerce continuously since then.

52.    H.I.S. has at all times relevant to this action had knowledge that these unregistered trademarks, supplemental register trademarks and trade dress existed and had secondary meaning, and that Gold-Bug has demanded that it cease and desist from using these principal register trademarks.

53.    H.I.S. has marketed and distributed H.I.S. Backpacks infringing upon these unregistered trademarks, supplemental register trademarks and trade dress, and colorable imitations of these unregistered trademarks, supplemental register trademarks and trade dress, in a manner which is likely to cause confusion, or to cause mistake, or to deceive retail customers for these products in violation of the Lanham Act giving rise to a private cause of action pursuant to 15 U.S.C. § 1114(1).

54.    It has been the intent of H.I.S. at all times pertinent to this action to confuse, cause to make mistakes, and deceive retail customers for products such as the Gold-Bug Backpacks and the knock off H.I.S. Backpacks through these actions.

55.    H.I.S. willfully continues to market and distribute H.I.S. Backpacks which infringe upon Gold-Bug's unregistered trademarks, supplemental register trademarks and trade dress rights.

56.    Gold-Bug has suffered damages as a result of Lanham Act violations by H.I.S. entitling it to statutory and compensatory and punitive damages, its reasonable attorney's fees and costs in connection with this action, and all injunctive relief authorized under the Lanham Act.

C.     THIRD CLAIM (UNFAIR COMPETITION BY MISAPPROPRIATION)

57.    Gold-Bug has made a substantial investment of time, effort and money in designing the Gold-Bug Backpacks and the materials used to market the Gold-Bug Backpacks which have commercial and business value to Gold-Bug ("the Product") such that the Court can characterize the Product as a property right.

58.     H.I.S. has knowingly and willfully appropriated the Product at little or no cost, such that the Court can characterize the Product which has been appropriated by H.I.S. through its marketing and distribution of knockoff H.I.S. Backpacks as an instance of H.I.S. "reaping where it has not sown."

59.     H.I.S.'s knowing and willful misappropriation of the Product from Gold-Bug has resulted in a direct diversion of profits from Gold-Bug to H.I.S. and/or a loss of royalties that Gold-Bug may charge to others for use of the Product in an amount in excess of $100,000, and has given rise to profits on the part of H.I.S. which it is obligated to disgorge.

60.     Therefore H.I.S. has engaged in unfair competition by misappropriation of the Product under both the relevant provisions of the common law tort, and under the Lanham Act, entitling it to money damages and an injunction to prevent future harm to Gold-Bug.

**WHEREFORE,** the Plaintiff requests that it be awarded statutory and compensatory and punitive damages including disgorgement damages, in an amount to be proven at trial in excess of $100,000, pre-judgment and post-judgment interest at the statutory rate, its reasonable attorneys' fees and costs in connection with this action, and all injunctive relief authorized under the Lanham Act, the Federal Rules of Civil Procedure and common law.

**PLAINTIFF HEREBY DEMANDS A TRIAL TO A JURY ON ALL CLAIMS SO TRIABLE.**

Dated this 19th day of August, 2014.

SEMLER & ASSOCIATES, P.C.

By: /s/ Andrew Oh-Willeke
R. Parker Semler
Andrew Oh-Willeke, Of Counsel
SEMLER & ASSOCIATES, P.C.
1775 Sherman Street, Suite 2015
Denver, Colorado 80203
Phone: (303) 839-1680
Fax: (303) 839-1642
parker@semlerlaw.com
andrew@semlerlaw.com
*Attorneys for Plaintiff Gold, Inc. doing business as Gold-Bug For Kids, Inc.*

**Plaintiffs Address:**
Gold-Bug For Kids, Inc.
18245 East 40th Avenue
Aurora, Colorado 80011